UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08cv4-RJC

| ZEPSA INDUSTRIES, INC. d/b/a | ) |
| ZEPSA ARCHITECTURAL WOODWORK, | ) |
| Plaintiff, | ) |
| v. | ) |
| ALVIN E. KIMBLE, COMMUNICATIONS CONSULTANTS, INC., and TELECOMMUNICATION CONSULTANTS, INC., | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court pursuant to the plaintiff's Motion for Pretrial Order on Admiralty Issues of Jurisdiction and Choice of Law (Doc. No. 39) and defendants' Motion for Clarification of Law Governing Choice of Law Issues (Doc. No. 48). The Court held a pretrial conference on November 5, 2008 to determine the applicable law and "facilitate the just, speedy, and inexpensive disposition of the action." Fed. R. Civ. P. 16(c). Pursuant to Fed. R. Civ. P. 16, the Court finds that North Carolina law applies to the plaintiff's breach of contract claims.

**I.     BACKGROUND**

Plaintiff Zepsa Industries, Inc. ("Zepsa") is a North Carolina corporation with its principal place of business in North Carolina. Defendant Communications Consultants, Inc. ("CCI") is a Cayman Islands corporation that owns the M/Y REBECCA, a recreational vessel ("Vessel"). Defendant Telecommunication Consultants, Inc. ("TCI") is a Louisiana corporation and is the United States agent for CCI. Defendant Alvin E. Kimble ("Kimble") is a resident of Louisiana and

shareholder of CCI and TCI. (Doc. No. 41 at 2).

Plaintiff entered into an Agreement (Doc. No. 41-4) and Completion Agreement (Doc. No. 41-2) with defendants whereby the plaintiff agreed to design, manufacture and install certain architectural woodworking on the Vessel. Both agreements included a choice of law provision stating that the agreements would be construed in accordance with North Carolina law. Plaintiff claims that defendants breached both agreements by failing to timely provide design information and unabated access to the Vessel. Without addressing the merits of plaintiff's claims, the Court must decide whether North Carolina law or admiralty law applies.

## II.     ANALYSIS

### A. Subject Matter Jurisdiction is Based on Admiralty Law

The first step in a choice of law analysis involving multiple grounds for subject matter jurisdiction is to determine the basis of the court's jurisdiction. If jurisdiction is based upon diversity, then the Court is bound to apply the choice of law rules of North Carolina. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (explaining that a court sitting in diversity applies the choice of law rules of the state in which it sits). If, however, jurisdiction is grounded in admiralty, then admiralty law generally governs. See Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 206 (1996).

Congress granted federal district courts original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). When confronted with issues of admiralty jurisdiction over contracts, courts "look to the subject matter of the . . . contract and determine whether the services performed under the contract are maritime in nature." Exxon Corp. v. Cent. Gulf Lines, Inc., 500 U.S. 603, 612 (1991). "The boundaries of admiralty jurisdiction over contracts . . . have always been difficult to draw." Kossick v. United Fruit Co., 365 U.S. 731, 735 (1961).

Precedent is helpful when determining whether a contract is maritime in nature: "a contract to repair, or to insure a ship, is maritime, but a contract to build a ship is not." Id. (internal citations omitted); see also S.C. State Ports Auth. v. Silver Anchor, S.A., 23 F.3d 842, 846 n.3 (4th Cir. 1994). Because the contracts involved the manufacture and installation of woodwork on the Vessel, the contracts are comparable to repair contracts. Therefore, the contracts are maritime in nature and jurisdiction is grounded in admiralty.[1]

**B. Federal Common Law Follows the Restatement Test to Determine Choice of Law**

Since admiralty jurisdiction applies, the Court must apply federal common law to the choice of law determination. Chan v. Soc'y Expeditions, Inc., 123 F.3d 1287, 1297 (9th Cir. 1997); see Hawkspere Shipping Co. v. Intamex, S.A., 330 F.3d 225, 233 (4th Cir. 2003) ("In the absence of a contractual choice-of-law clause, federal courts sitting in admiralty apply federal maritime choice-of-law principles." (internal quotation marks omitted)). However, "[w]here the parties specify in their contractual agreement which law will apply, admiralty courts will generally give effect to that choice." Hawkspere, 330 F.3d at 233 (internal quotation marks omitted); see also Chan, 123 F.3d at 1297 (explaining how federal common law follows the approach of § 187 in the Restatement (Second) of Conflicts of Laws[2] ("Restatement Test") by allowing enforcement of choice of law

---

[1] Defendants do not dispute that this Court has admiralty jurisdiction. (Doc. No. 49 at 7).

[2] The Restatement (Second) of Conflict of Laws § 187 states:
187 Law of the State Chosen by the Parties
(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
    (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties choice, or
    (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the

agreements).

### 1. Restatement Test

Admiralty courts apply the Restatement Test when considering whether to enforce a choice of law clause. Under the Restatement Test, the parties' choice of law agreements are enforced, unless (1) "the state has no substantial relationship to the parties or transaction" or (2) "the state's law conflicts with the fundamental purpose of maritime law." Stoot v. Fluor Drilling Servs., Inc., 851 F.2d 1514, 1517 (5th Cir. 1988). The plaintiff, as the party challenging the choice of law clause, has the burden of proving that one of the exceptions applies. Cherokee Pump & Equip. Inc. v. Aurora Pump, 38 F.3d 246, 252 (5th Cir. 1994).

### 2. Substantial Relationship Exception

Here, North Carolina has a substantial relationship to the parties and to the transaction in three ways: (1) the plaintiff is incorporated and maintains its principal place of business in North Carolina; (2) at least one of the parties' agreements was executed in North Carolina; and (3) approximately 85% of the work under the contract was to occur in North Carolina. Thus, the plaintiff cannot successfully challenge application of the choice of law clause under the first exception.

### 3. Fundamental Purpose Exception

The plaintiff argues that the second exception applies because North Carolina law and admiralty law conflict on the issue of recovery for loss of use damages for a pleasure vessel; thus, application of a conflicting North Carolina law would violate the fundamental policy of uniformity.

---

applicable law in the absence of an effective choice of law by the parties.
(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law.

The plaintiff asserts that admiralty law prohibits recovery for loss of use damages for pleasure vessels. See The Conqueror, 166 U.S. 110, 111 (1897). North Carolina law, however, generally allows loss of use recovery for pleasure vehicles. See Sprinkle v. North Carolina Wildlife Res. Comm'n, 600 S.E.2d 473, 478 (N.C. Ct. App. 2004). The issue, then, is whether, under the current state of the law, North Carolina law and admiralty law conflict on loss of use damages and whether this conflict violates the fundamental purpose of uniformity in maritime law.

The seminal case in the admiralty context discussing loss of use damages for a pleasure vessel is The Conqueror. When the vessel was detained by a tax collector for a period of approximately five months, the owner sought $15,000 in damages for loss of use. In reversing the district court's award of damages, the Supreme Court stated that the law is well settled that "the loss of profits or of the use of a vessel pending repairs, or other detention, arising from a collision or other maritime tort, and commonly spoken of as 'demurrage,' is a proper element of damage." The Conqueror, 166 U.S. at 125. The Supreme Court noted that "it is equally well settled, however, that demurrage will only be allowed when profits have actually been, or may be reasonably supposed to have been, lost, and the amount of such profits is proven with reasonable certainty." Id. The Supreme Court then emphasized that

> it is not the mere fact that a vessel is detained that entitles the owner to demurrage. There must be a pecuniary loss, or at least a reasonable certainty of pecuniary loss, and not a mere inconvenience arising from an inability to use the vessel for the purpose of pleasure. . . . In other words, there must be a loss of profits in its commercial sense.

Id. at 133.

Since this decision, many circuits have cited The Conqueror to stand for the proposition that loss of use damages for pleasure vessels is prohibited under admiralty law. See, e.g., Central State Transit & Leasing Corp. v. Jones Boat Yard, Inc., 206 F.3d 1373, 1376 (11th Cir. 2000) (applying

the holding of The Conqueror to the facts of the case); Parrillo v. Commercial Union Ins. Co., 85 F.3d 1245, 1250-51 (7th Cir. 1996) (following The Conqueror and affirming the district court's decision to disallow recovery for loss of use of pleasure boats); Snavely v. Lang, 592 F.2d 296, 299 (6th Cir.1979) (noting that "the Court is constrained to view The Conqueror as retaining its full vitality"); Oppen v. Aetna Ins. Co., 485 F.2d 252, 257 (9th Cir.1973) (citing The Conqueror as support for the assertion that "loss of use of a private pleasure boat is not a compensable item of damages"); Thomson v. United States, 1959 AMC 1345, 1350 (4th Cir. 1959) (citing The Conqueror in denying damages for loss of use because such damages were "highly speculative and immeasurable"). Some courts, however, have seemingly rejected the prohibition on the loss of use damages. See, e.g., Brooklyn E. Dist. Terminal v. United States, 287 U.S. 170, 175 (1932); Finkel v. Challenger Marine Corp., 316 F. Supp. 549, 555 (S.D.Fla. 1970) ("The more modern view, however, seems to be that a private pleasure yacht falls in the same category as any other repairable chattel, such as an automobile, even though no substitute vessel is chartered to take its place during the period of detention."); The Vanadis, 250 F. 1010, 1010-11 (S.D.N.Y. 1918).

The Conqueror appears to be viable, controlling, if highly criticized, precedent. This Court is not in the position to rule differently though it might if it were writing on a clean slate. This Court finds Thomson and Nordasilla Corp v. Norfolk Shipbuilding & Drydock Corp., 1982 AMC 99 (E.D.Va. 1981), to be persuasive authority in the Fourth Circuit and holds that admiralty law prohibits recovery for loss of use damages for pleasure vessels.

Having come to this conclusion, the Court must now turn to examine whether North Carolina law allowing recovery for loss of use damages conflicts with a fundamental purpose of maritime law. The plaintiff alleges that North Carolina law conflicts with the fundamental purpose of uniformity in maritime law. The plaintiff, however, has not cited any authority to support this assertion. While

admiralty is a field where national uniformity is especially important, this Court is not persuaded by the plaintiff's argument. The plaintiff can point to no federal statute or admiralty court holding that loss of use damages are a fundamental part of a uniform admiralty scheme, thus this Court finds that North Carolina law does not conflict with a fundamental purpose of maritime law. Therefore, the Court concludes that the parties' choice of law provision will govern, and North Carolina law will allow Defendants to seek loss of use damages as the case moves forward.

## III. CONCLUSION

Accordingly, the Court finds that the contracts at issue are maritime in nature and will be construed pursuant to North Carolina law.

Signed: November 11, 2008

Robert J. Conrad, Jr.
Chief United States District Judge